UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ILKB, LLC

                                        Plaintiff,

            - vs -                                        Civil Action No.

ARDAMANDEEP SINGH, HARJINDER SINGH, FIT
THEOREM INC, FIT THEOREM SUGARLAND INC,
AND FIT THEOREM FRIENDSWOOD INC.

                                        Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ILKB, LLC ("Plaintiff" or "ILKB"), by its attorneys, Gordon Rees Scully

Mansukhani, for its Verified Complaint for Damages and Injunctive Relief against Defendants

Ardamandeep Singh ("Ardamandeep"), Harjinder Singh ("Harjinder"), Fit Theorem Inc. ("FTI"),

Fit Theorem Sugarland Inc. ("FTSI"), Fit Theorem Friendswood Inc. ("FTFI"), collectively

"Defendants," respectfully alleges as follows:

## NATURE OF ACTION

1.      ILKB brings this action to protect its franchise system from rogue, former

franchisees, Ardamandeep and Harjinder Singh (the "Singhs"), who illegally used their prior

relationship ILKB to misappropriate ILKB's good will, customers, confidential information, and

franchisees to form a competing fitness business in breach of their Franchise Agreement and

federal and state law.

2.      The Singhs, having operated an ILKB franchise for half a decade, changed the

name of their business while retaining the same location, same contact information, same

employees, and most importantly, ILKB's loyal customers.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 1

3.      Rather than de-identify with ILKB, Defendants kept vestiges of their relationship with ILKB in order to retain those customers. In their marketing and advertising materials and their social media presence, Defendants used ILKB logos and pass off results customer obtained using the proprietary ILKB system as their own.

4.      The Singhs also illegally sought out other ILKB franchisees and encouraged them to breach their contracts with ILKB to develop their new brand by misappropriating knowledge and good will that ILKB developed.

5.      Defendants' egregious conduct is an attempt by Defendants to line their own pockets at the expense of ILKB and the other franchisees in the system who continue to comply with the system's operational requirements in good faith.

6.      ILKB has invested significant time and money in building a franchise system of kickboxing fitness studios. The result is ILKB's innovative approach to fitness, marketing, and converting prospective leads into loyal and committed members. As in many franchise systems, protecting the brand and the integrity of the system are paramount concerns for the survival and success of the system as a whole.

7.      Defendants' illegal actions threaten to destroy that system.

8.      Consequently, ILKB seeks damages as described more fully below.

9.      ILKB also intends to seek preliminary and permanent injunctive relief due to the irreparable harm that Defendants will cause to ILKB if Defendants are not stopped.

10.     The relief requested herein is necessary to enforce ILKB's system standards and protect the integrity of the system against the Singhs and their newly formed entities, who are determined to create a competing brand through misappropriation of ILKB's customers and proprietary systems.

## THE PARTIES

11.     Plaintiff ILKB is organized under the laws of the State of New York with its principal place of business at 1844 Landsdowne Avenue, Merrick, NY 11710. ILKB is the franchisor of iLoveKickboxing.com, a franchise of physical fitness studios focused on kickboxing. The ILKB franchise system consists of over 200 studios operating throughout the United States and Canada.

12.     Ardamandeep is a natural person who, upon information and belief, is a citizen of Texas and resides in or around Houston, Texas. He is the signatory to a franchise agreement with ILKB (the "Franchise Agreement") dated July 25, 2015. **Exhibit A.**

13.     Ardamandeep owned and operated two ILKB studios in the Houston area, one located at 2725-Q Town Center Blvd Sugar Land, TX 77479, (832) 529-2220 (the "Sugarland Location") and the other located at 405 West Parkwood Avenue, Friendswood, TX 77546, (281) 819-4333 (the "Friendswood Location").

14.     Harjinder is a natural person who, upon information and belief, is a citizen of Texas and resides in Houston, Texas with Ardamandeep. On information and belief, Harjinder operated the Sugarland Location and the Friendswood Location with Ardamandeep. On information and belief, Harjinder was a de facto owner, operator, manager, and director of Ardamandeep's ILKB-branded studios. Based on his role in the company, Harjinder is bound by the terms of the Franchise Agreement. In recent years, Harjineder was ILKB's principal point of contact for the franchised businesses.

15.     FTI is a Texas corporation organized by Harjinder, which does business in Texas. FTI markets itself as a fitness business, offering both in person and online fitness classes.

16.     FTSI is a Texas corporation and fitness studio, which operates out of the

Sugarland Location and uses the Sugarland Location's phone number. FTSI is related to FTI and uses the same systems as FTI.

17.     FTFI is a Texas corporation and fitness studio, which operates out of the Friendswood location and uses the Friendswood Location's phone number. FTFI is related to FTI and uses the same systems as FTI.

## SUBJECT MATTER JURISDICTION

18.     This Court has subject matter jurisdiction in this case under 28 U.S.C. § 1332. Plaintiff is a citizen of New York. Defendants are Texas Citizens; thus, there is complete diversity of citizenship between ILKB and Defendants, and the amount in controversy exceeds $75,000, exclusive of fees and costs.

19.     Subject matter jurisdiction in this Court also exists under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*.

20.     Subject matter jurisdiction over the remaining claims also exists pursuant to 28 U.S.C. § 1367 because those claims for relief are so related to the other causes of actions as to form part of the same case or controversy.

## PERSONAL JURISDICTION AND VENUE

21.     This Court has personal jurisdiction over Defendants pursuant to New York's long arm statute, C.P.L.R. § 302(a)(1) because the Ardamandeep and Harjinder transacted business in the State of New York and this action arises out of that business transaction.

22.     Personal jurisdiction exists under New York's long arm statute, C.P.L.R. § 302(a)(3) because the Singhs' actions in conjunction with FTI, FTSI, and FTFI caused injury in the state of New York and reasonably should have expected damages to occur in the state based on the prior, substantial revenue gained by the Singhs through their participation in interstate

commerce.

23.     This Court also has personal jurisdiction over the Singhs because they consented and submitted to personal jurisdiction in either New York or Nassau County, New York pursuant to the Franchise Agreement.

24.     Venue is this Court is appropriate under 28 U.S.C. § 1391.

25.     In addition, and pursuant to the Franchise Agreement, the Singhs waived any objection to the laying of venue in this Court. The Franchise Agreement and all related matters are expressly governed by the laws of New York, without regard to the principles of conflicts of laws, and provides that any dispute between ILKB and the Singhs shall take place in New York.

## THE DEFENDANTS' FRANCHISE AGREEMENT

26.     The relationships between ILKB and its franchisees are governed by franchise agreements, each of which contain essentially the same terms and provisions and are intended to govern each franchisee's operation of a single iLoveKickboxing.com studio within a specified geographic territory.

27.     Because many franchisees in the system are business entities, important provisions of the franchise agreements also apply to "Principal Equity Owners."

28.     Ardamandeep and ILKB are parties to the Franchise Agreement, which granted Ardamandeep the right to develop a total of two studios in the Houston, Texas area (the "Territory").

29.     Pursuant to the Franchise Agreement, Ardamandeep and Harjinder opened two ILKB franchised studios within the Territory: the Sugarland Location and the Friendswood Location.

30.     In the capacity of operating the ILKB Franchise, Harjinder was an agent of

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 5

Ardamandeep. On information and belief, both Ardamandeep and Harjinder are owners of the ILKB franchise and, therefore, are bound by certain contractual provisions specified in the Franchise Agreement.

31.     To protect ILKB's franchise business, trade secrets, and confidential information, including without limitation information regarding the "operational, sales, promotional, and marketing methods and techniques of the System," Article XI of the Franchise Agreement restricts the Singhs from certain in-term activities which might harm ILKB and its franchise system.

32.     First, pursuant to Section 11.1(a), during the term of their franchisee, the Singhs promised not to "operate, manage, own, assist or hold an interest in (direct or indirect as an employee, officer, director, shareowner, partner or otherwise), or engage in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, without our express prior written consent."

33.     Second, pursuant to Section 11.1(b), the Singhs promised not to "(i) divert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, (ii) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System, or (iii) solicit without our prior consent any person who is at that time employed by us or any related entity to leave his or her employment."

34.     Pursuant to Article VIII, the Singhs also agreed to operate in conformity with the methods and standards required of all franchisees. The Singhs, like all other ILKB franchisees, are aware that other franchisees in the system are similarly bound.

35.     Under Section 8.2 of the Franchise Agreement, the Singhs were required to keep

the Confidential Operations Manual, a document developed to direct franchisees in how to operate their ILKB-branded business, confidential and return it at the end of their term.

36.     Under the Franchise Agreement, franchisees are required to maintain a telephone number for their franchise. At the end of the term, they are required to turn that number over to ILKB or cancel the listing. Ex. A §§ 8.9, 15.1.

37.     Under Section 9.1 of the Franchise Agreement, the Singhs were prohibited from using ILKB's trademarks for any purposes not approved in the Confidential Operations Manual.

38.     Under Section 9.3 of the Franchise agreement, the Singhs were prohibited from using any of ILKB's trade secrets and confidential and proprietary information for any purposes other than the operation of an ILKB franchise as described in the Confidential Operations Manual.

39.     Under Section 11.2 of the Franchise Agreement, the Singhs agreed to a one-year non-competition agreement following their termination or separation from ILKB. That clause prohibits Defendants from either directly or indirectly "operat[ing], manag[ing], own[ing], assist[ing] or hold[ing] an interest in…, or engag[ing] in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, within a radius of 25 miles of your Outlet or any other authorized retail location selling ILKB Services and Products, without our express prior written consent." This clause further prohibited using any confidential or proprietary information.

40.     Under section 15.1 of the Franchise Agreement, upon termination, Defendants were required to

      a.   Discontinue the use or display of ILKB Marks;

      b.   cease operations of ILKB franchise location;

c.  contact Yelp, and other online websites to request removal of ILKB Marks used in connection with your ILKB franchise location;

d.  return all proprietary and confidential information as outlined in Section 15.2; and

e.  assign all interest and right to telephone numbers and listings to ILKB.

## ILKB'S INTELLECTUAL PROPERTY, TRADE SECRETS, AND CONFIDENTIAL INFORMATION

41.     At considerable effort and expense, ILKB has developed confidential and proprietary information concerning the marketing and sales of its franchises. Among other things, ILKB has conceived and developed various service marks and trade dress, business plans, service delivery strategies, training materials, cost models and budgets, and lead generation systems which are highly proprietary to ILKB. ILKB's trade secrets are at least partly contained within its Confidential Operations Manual.

42.     ILKB expends significant resources, in terms of capital investment and time, to develop customized marketing strategies to bolster the value of the iLoveKickboxing.com brand and sell franchises. For this reason, ILKB takes special precautions to maintain the confidentiality of its confidential and proprietary information.

43.     ILKB has the right to license the federally registered iLoveKickboxing.com® trademarks, service marks, logos, and derivations thereof (the "Marks") for use by its franchisees to be used solely in the operation of an ILKB branded business.

a.  The service mark iLoveKickboxing.com, Registration No. 4,009,496, registered on August 8, 2011.



b.  The service mark                        , Registration No. 4,324,564,

registered on April 23, 2013.



c.  The service mark                        , Registration No. 5,446,133,

registered on April 17, 2018.

44.     ILKB owns the distinctive and well-known iLoveKickboxing® system, which

offers in person and online fitness classes, which focus on kickboxing to the public under the

Marks.

45.     ILKB grants licenses to franchisees to use the Marks and participate in its

confidential and proprietary business systems pursuant to written franchise agreements, which

are reasonably and carefully tailored to protect ILKB's valuable confidential information,

reputation, goodwill, and other legitimate business interests.

46.     Under the Franchise Agreement, the Singhs had a limited license to use the

Marks. The Singhs agreed to only use the Marks in conjunction with the operation of their ILKB

franchises. They specifically agreed that they would not "display Marks except in the manner

[ILKB] authorize[d]." Ex. A § 8.3. Moreover, they acknowledged that "the use of the Marks

outside the scope of the terms of this Agreement without [ILKB's] written consent is an

infringement of the Owner of the Marks' and our exclusive rights, title and interest in and to the Marks." *Id.* at § 9.3.

47.     Over the course of their franchise relationship with ILKB, the Singhs had complete access to and, upon information and belief, did access, significant quantities of information related to ILKB franchise model, which included marketing materials, methods, and opportunities; potential revenues associated with those opportunities, franchisee owner and contact information; customer and prospect lists; and ILKB's approach to meeting the needs and requirements of its franchisees.

48.     ILKB carefully safeguards its confidential and proprietary business information by, among other things, limiting access to such information to existing franchisees, maintaining computer security devices, and requiring franchisees to agree that they will not disclose confidential information to anyone outside of ILKB and its franchise system pursuant to Section 9.3 of the franchise agreements.

49.     The Singhs, by virtue of the Franchise Agreement, gained access to this information and, pursuant to Section 9.3, promised to keep it confidential and only use it for ILKB business.

50.     The Singhs participated in regular meetings and trainings between ILKB and franchisees, which included discussions about planning, services, cost information, profit margins, sales training, strategic decisions with respect to ILKB's franchise system, and the future direction and long term growth challenges and opportunities of ILKB.

51.     Through their interaction with ILKB personnel and executives, the Singhs have obtained a great deal of knowledge with respect to the personal fitness marketplace and marketing strategies which are proprietary to ILKB and were developed by ILKB for the sole

benefit of itself and its franchisees.

52.     The above-mentioned information is not generally known, costly to produce, and difficult to obtain.

## DEFENDANTS' CONTRACTUAL BREACHES AND INTENTIONAL INTERFERENCE WITH THE ILKB FRANCHISE SYSTEM

53.     The Singhs, benefiting from the goodwill associated with ILKB's service marks and trade dress, and employing ILKB's trade secrets and confidential information, were successful in the opening and operation of their studios in Texas.

54.     The Singhs—as a result of their status as ILKB franchisees and manifestly unlawful actions—are in a unique position to improperly take advantage of the goodwill that ILKB has invested a significant amount of time and resources developing and cultivating with its franchisees.

55.     The Singhs have taken that knowledge to FTI, FTSI, and FTFI and are actively coordinating to violate the Franchise Agreement as well as state and federal law.

56.     During the term of their Franchise Agreement, the Singhs began a scheme to compete with ILKB by developing a new brand of fitness studio: FTI. On information and belief FTI would offer effectively the same services and seek to take advantage of the customer base that the Singhs developed using the ILKB system. It is unknown exactly how long the Singhs had been plotting, but there are online references to FTI that date back to 2018 on the LinkedIn profiles of the Singh's ILKB employees.

57.     On or about September 16, 2019, the Singhs purchased and registered the "fittheorem.com" domain name. The purchase of this domain name, which they would later use in the operation of FTI, demonstrates that prior to the expiration of their franchise agreement, the

Singhs were intending to set up a competing fitness business and use ILKB's confidential information to profit from their relationship with ILKB. Competing with ILKB during their term was a material breach of the Franchise Agreement.

58.     In the Spring of 2020, Harjinder informed ILKB that he had to shut down the Sugarland and Friendswood locations because of losses associated with the COVID-19 pandemic. This was false and the Singhs knew it was false.

59.     In reality, the Singhs had been planning to rebrand their ILKB-branded businesses as "Fit Theorem" studios and intended to compete in the same territory and steal ILKB's, good will, intellectual property, and customers.

60.     Between March and July 2020, the Singhs, in fact, rebranded the Sugarland and Friendswood locations as FTI businesses.

61.     On May 19, 2020, using their ILKB Facebook page, FTI posted a picture of one of its trainers wearing the FTI logo and began to promote their "www.fittathome.com" website and solicit ILKB customers. This website is an FTI branded site with links to the FTSI and FTFI locations websites. It was registered on March 26, 2020. It offers services identical to ILKB's website.

62.     On May 26, 2020, using their ILKB Facebook page, FTI posted a picture of one of its trainers wearing the FTI logo and began to promote their "FITTFAM" brand. This trainer was an ILKB trainer, who used ILKB's confidential information in the course of his job. On information and belief "FITTFAM" is an FTI slogan, used to promote the FTI business. **Exhibit B**.

63.     On July 6, 2020, using their ILKB branded Facebook page, FTI and FTSI solicited ILKB customers to the FTI Facebook page. This Facebook page used FTI logos.

**Exhibit C**.

64.     On July 29, 2020, FTI thanked its ILKB customers for sticking by them during their unauthorized transition to a new brand.

65.     The Fit Theorem businesses offer the exact same services as the Singhs' ILKB franchises and service the exact same customers.

66.     Upon information and belief, the Singhs use knowledge of ILKB's confidential information and trade secrets in the operation of FTI, FTSI, and FTFI, which is a material breach of the Franchise Agreement.

67.     The Singhs' unique knowledge of ILKB's confidential information and strategies will give Defendants a distinctly unfair advantage in competing with ILKB for business. Unlawfully possessing ILKB's proprietary information, such as that described above, would enable and have enabled the Singhs to make decisions about their own plans that take into account ILKB's confidential business information.

68.     In addition to setting up a competing the system, based on information and belief the Singhs are operating an unregistered franchise system under the Fit Theorem brand. Defendants have coordinated to solicit and sign up other ILKB franchisees to join their new company. Defendants are knowingly doing so in violation of their own Franchise agreement and encouraging other franchisees to breach their franchise agreements.

69.     The Singhs have continued to use ILKB's intellectual property, including but not limited to its trademarks, trade dress, and service marks in violation of Article IX of the Franchise Agreement.

70.     FTI, FTSI, and FTFI have been using the same telephone numbers and addresses for the former franchise locations on business cards, their websites, and social media profiles.

71.     FTI, FTSI, and FTFI have been using before and after photographs from ILKB customers, which use ILKB's Marks on their websites, and social media profiles. These images promote a deliberately false impression that FTI system and not ILKB system produced these results. These photos also suggest that ILKB was either associated with or approved of FTI, FTSI, and FTFI, which is false.

72.     Defendants continue to use customer results obtained using the ILKB system as well as ILKB customer testimonials to promote their Defendants' new business. Indeed, the results and photos from many of these customers predate the creation of Fit Theorem.

73.     ILKB terminated its relationship with the Singhs on August 11, 2020, by sending a notice of termination letter. This letter reminded the Singhs of their post-termination obligations under the franchise agreement, including:

   a.   Immediately returning all copies of the Confidential Operations Manual and all promotional materials;

   b.   De-identifying with ILKB, including referencing themselves as formerly associated with ILKB;

   c.   Removing all ILKB marks and discontinuing any communications that suggest a relationship with ILKB;

   d.   Transferring all telephone numbers for the location to ILKB or canceling and delisting them; and

   e.   Not competing with ILKB for 12 months unless Franchisor gives written approval.

74.     The Singhs were also reminded of the consequences of failing to comply with their duties under the Franchise Agreement.

75.     The Singhs remain in breach of all of these obligations.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

76.     ILKB realleges the allegations contained in paragraphs 1 through 753 of this Complaint as if set forth fully herein.

77.     ILKB and the Singhs are parties to a valid and enforceable Franchise Agreement.

78.     ILKB has substantially performed all of its duties associated with the Franchise Agreement.

79.     Pursuant to the terms of the Franchise Agreement, the Singhs are prohibited from, inter alia, (a) directly or indirectly operating, managing, owning, assisting, or holding an interest in any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business; (b) diverting or attempting to divert any business or customer of the Franchised Business to any competitor; (c) doing or performing any act injurious or prejudicial to the goodwill associated with the Marks or the franchise system; (d) using telephone numbers from the former franchise locations; (e) using ILKB's Marks; and (f) using ILKB's confidential information.

80.     The in-term and post-term restrictive covenants are reasonable and necessary for the protection of ILKB's legitimate interest in its trade secrets and confidential information and the integrity of its franchise system.

81.     As described above, the Singhs breached the terms of the Franchise Agreement by creating and operating the competing FTI brand and opening and operating FTSI and FTFI at the same locations and contact information, using the same personnel, stealing ILKB's customer and confidential information, and using ILKB's Marks in their materials.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 15

82.      In so doing, the Singhs have diverted customers and other ILKB franchisees toward the competing enterprises and otherwise taken action injurious to the goodwill associated with the ILKB service marks, trade dress, and franchise system.

83.      If the Singhs are not enjoined from operating a directly competitive business, soliciting franchisees, from violating their Agreements, and from using or disclosing ILKB's trade secrets and other confidential proprietary information, ILKB will suffer immediate and irreparable harm to its business and goodwill, including but not limited to: loss of business and commercial reputation, goodwill, business and economic opportunities, loss of use of its own property, and loss of use and disclosure to a competitor of this valuable confidential and proprietary information.

84.      In addition, as a proximate and direct result of the Singh's actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, consequential, and liquidated damages.

## SECOND CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Common Law of the State of New York)

85.      ILKB realleges the allegations contained in paragraphs 1 through 75 of this Complaint as if set forth fully herein.

86.      By virtue of his contractual relationships with ILKB, ILKB gave the Singhs access to trade secrets and confidential and proprietary information ("Trade Secret Information")—information that is valuable to ILKB's franchise model and gives ILKB an advantage over competitors.

87.      The Singhs have a common law duty prohibiting him from using Trade Secret Information procured during their franchise relationship with ILKB for any purpose other than

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 16

for the benefit of franchise and, by extension, ILKB as franchisor.

88.    The Singhs have misappropriated ILKB's Trade Secret Information, upon

information and belief, for their own pecuniary gain by transferring to FTI, FTSI, and FTFI. On

information and belief, all of Defendants know that they are improperly using ILKB's

confidential information.

89.    ILKB is entitled to preliminary and permanent injunctive relief.

90.    Unless injunctive relief is granted, the Singhs will continue to misappropriate and

benefit from misappropriation of the Trade Secret Information and will continue to cause further

irreparable injury to ILKB.

91.    In addition to giving rise to injunctive relief, the Defendants' misappropriation of

ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to

suffer substantial damages, including without limitation direct, incidental, and consequential

damages, in an amount to be established at trial.

92.    Defendants' misappropriation of ILKB's Trade Secret Information was

intentional, malicious, unlawful, unfair and otherwise improper, thereby making punitive

damages appropriate.

## THIRD CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Statutory Laws of the United States)

93.    ILKB repeats and realleges the allegations contained in paragraphs 1 through 75

of this Complaint as if set forth fully herein.

94.    The Trade Secret Information obtained by defendants relates to ILKB's business

and services that are maintained and provided in interstate commerce.

95.    The Trade Secret Information obtained by defendants is a "trade secret" within

the meaning of 18 U.S.C. § 1839(3) because, inter alia, it is secret and of value as a result of not being generally known as set forth above, and ILKB takes and has taken measures to prevent the secrets from becoming available to persons other than those selected by ILKB to have access thereto.

96.     The Singhs have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain. They have shared this information with FTI, FTSI, and FTFI, who know that this information has been illegally misappropriated, but nonetheless use it in the operation of their businesses.

97.     As a result of Defendants' misappropriation of ILKB's Trade Secret Information, defendants have and continue to violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

98.     Pursuant to Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A), ILKB is entitled to preliminary and permanent injunctive relief.

99.     Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

100.    In addition to giving rise to injunctive relief, Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer actual damages in an amount to be established at trial.

101.    By virtue of Defendants' bad faith and willful and malicious misappropriation of ILKB's Trade Secret Information, ILKB is entitled to an award for its damages, reasonable royalties, exemplary damages in an amount up to two times awarded damages and reasonable attorney's fees, as provided for by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b)(3)(B)-

(D).

## FOURTH CAUSE OF ACTION

(Unfair Competition)

102.    ILKB realleges the allegations contained in paragraphs 1 through 75 of this

Complaint as if set forth fully herein.

103.    Defendants have engaged in conduct intended to undermine, destroy and

misappropriate the business of ILKB by using ILKB's Trade Secret Information to compete

unfairly with ILKB in violation of defendants' contractual obligations and the common-law.

104.    Defendants' conduct constitutes common law unfair competition, and unless they

are enjoined, ILKB will suffer irreparable injury for which it is no adequate remedy at law.

105.    In addition, as a proximate and direct result of Defendants' actions, ILKB has and

will continue to suffer substantial money damages, including without limitation direct,

incidental, and consequential damages.

## FIFTH CAUSE OF ACTION

### (Tortious Interference with Contract Against Defendants)

106.    ILKB repeats and re-alleges paragraphs 1-75.

107.    The Franchise Agreements between ILKB and its franchisees are valid and

enforceable.

108.    Defendants, including the Singhs, knew of the existence of the Franchise

Agreements ILKB entered into with approximately 200 of franchisees based on their personal

experience as ILKB franchisees.

109.    Defendants are aware of the covenants against competition, solicitation, and use

of ILKB's confidential and proprietary information.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 19

110.     Despite these unequivocal terms, Defendants have harmed and continue to harm ILKB by luring ILKB's franchisees to breach their respective Franchise Agreements and join Fit Theorem. To date, Fit Theorem has attracted and signed up at least five ILKB franchisees, who are still have contractual obligations to ILKB under their franchise agreements, including Kevin and Edna Smith, Timothy Metcalf, Jeyson and Isabel Seygovia, Arun Santhanam, and Udit Saxena.

111.     Defendants induced ILKB's franchises to breach various provisions of the Franchise Agreements, including, but not limited to their contractual obligations to pay royalties and marketing fees, notice requirements, and post-termination obligations, such as the duty to not compete and not solicit.

112.     As a result of Defendants' tortious conduct, ILKB franchisees had breached and continue to breach their respective the Franchise Agreements with ILKB in an effort to join Fit Theorem.

113.     Defendants' tortious interference has caused ILKB to suffer irreparable injury and ILKB will continue to suffer irreparable injury unless they are enjoined from further tortious interference with ILKB's Franchise Agreements.

114.     As a direct and proximate result of Defendants' tortious interference, ILKB has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Camac's profits.

## NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF

(Preliminary and Permanent Injunctive relief)

115.     ILKB re-alleges the allegations contained in paragraphs 1 through 103 of this

Complaint as if set forth fully herein.

116.     For all the foregoing reasons, and ass monetary damages are inadequate to fully

compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer

relationships, and future profits resulting from Defendants' wrongful acts, preliminary and

permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons

acting in concert with them from engaging in activities which are in direct violation of the in-

term non-competition and anti-diversion clauses in the Franchise Agreement, ILKB prays for a

preliminary and permanent injunction as set forth in Paragraph A of its prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, ILKB demands judgment as follows:

A.     As monetary damages are inadequate to fully compensate ILKB for the

incalculable loss of its competitive edge, goodwill, customer relationships, and future profits

resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring

Defendants, their servants, agents, employees, and all persons acting in concert with them from

engaging in activities which are in direct violation of the in-term non-competition and anti-

diversion clauses in the Franchise Agreement including: (i) offering, advertising, marketing or

otherwise engaging in competitive services against ILKB for the duration of the Franchise

Agreement and pursuant to the post-termination provisions specified under Section 11.2; (ii)

using ILKB's trade secrets and confidential and proprietary information in a manner which

would result in harm to ILKB and its franchise system; (iii) soliciting, directly or indirectly, any

ILKB franchisees or prospects for benefit of the Fit Theorem brand; (iv) inducing or encouraging

any ILKB franchisees to breach their respective franchise agreements with ILKB, including

without limitation those provisions designed to preserve and maintain the uniformity of the

system (Article VIII); (v) using ILKB's Marks; or (vi) using the former contact information for ILKB.

      B.    An award of damages in an amount sufficient to compensate it for any ascertainable and calculable damages, losses, and/or loss of revenues and opportunities occasioned by Defendants' wrongful conduct as described herein, including, but not limited to, payment of past and future lost royalties occasioned by Defendants' breach of contract, direct and indirect damages for misappropriation of trade secrets and confidential and proprietary information, and damages for tortious interference and unfair competition;

      C.    An award of pre-judgment interest on all such sums awarded;

      D.    An award of punitive and exemplary damages and reasonable royalties as the Court may deem appropriate; and

      E.    An award of costs, disbursements and attorneys' fees incurred in connection with this action, as well as any other and further relief as the Court may deem just, proper, and equitable.

Dated:  September 9, 2020.        GORDON REES SCULLY MANSUKHANI, LLP

                        By: */s/*
                              Peter G. Siachos, NY Bar #4436168
                              psiachos@grsm.com
                              1 Battery Park Plaza, 28th Floor
                              New York, NY 10004
                              Phone: (973) 549-2527
                              Fax: (973) 377-1911

                              *Attorneys for Plaintiff ILKB*