UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ILKB, LLC,

                                    Plaintiff,

     -  against -


ARDAMANDEEP SINGH, HARJINDER SINGH, FIT
THEOREM INC., FIT THEOREM SUGARLAND, INC.,
and FIT THEOREM FRIENDSWOOD, INC.,


                                    Defendants.

And

ARDAMANDEEP SINGH,


                                    Defendant/Counter-
                                    Plaintiff,

     -   against –

ILKB, LLC, MICHAEL PARRELLA, and ILKB TOO,

LLC,



Counter-defendants/ Additional Defendants.

Civil Action No.
1:20-cv-04201-ARR-SJB

**AMENDED ANSWER AND DEFENSES OF DEFENDANTS ARDAMANDEEP SINGH,
HARJINDER SINGH, FIT THEOREM INC., FIT THEOREM SUGARLAND, INC., AND
FIT THEOREM FRIENDSWOOD, INC.TO PLAINTIFF'S COMPLAINT AND
COUNTERCLAIMS**

For their Answer and Affirmative Defenses to Plaintiff ILKB, LLC's ("ILKB") Complaint for Damages and Injunctive Relief (the "Complaint"), Defendants Ardamandeep Singh ("Ardamandeep"), Harjinder Singh ("Harjinder"), Fit Theorem, Inc. ("FTI"), Fit Theorem Sugarland, Inc. ("FTSI"), and Fit Theorem Friendswood, Inc. ("FTFI") (collectively, "Defendants"), by their attorneys Einbinder & Dunn, LLP, state as follows:

## NATURE OF ACTION

1. Defendants deny the allegations in paragraph 1 of the Complaint.

2. Defendants deny the allegations in paragraph 2 of the Complaint.

3. Defendants deny the allegations in paragraph 3 of the Complaint.

4. Defendants deny the allegations in paragraph 4 of the Complaint.

5. Defendants deny the allegations in paragraph 5 of the Complaint.

6. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

7. Defendants deny the allegations in paragraph 7 of the Complaint.

8. Defendants admit that ILKB seeks damages and denies that ILKB is entitled to damages as alleged in paragraph 8 of the Complaint.

9. Defendants admit that ILKB seeks injunctive relief in the Complaint and denies that it is entitled to such relief as alleged in paragraph 9 of the Complaint.

10. Defendants deny the allegations in paragraph 10 of the Complaint.

## THE PARTIES

11. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, except that ILKB is or was the franchisor of iLoveKickboxing.com.

12. Defendants admit the allegations in paragraph 12 of the Complaint.

13. Defendants deny the allegations in paragraph 13 of the Complaint.

14. Answering paragraph 14 of the Complaint, Defendants aver that Harjinder is a natural person and a citizen of the state of Texas and resides in Houston, Texas. Except as so stated, Defendants deny the allegations in paragraph 14 of the Complaint.

15. Defendants admit the allegations in paragraph 15 of the Complaint.

16. Answering paragraph 16 of the Complaint, Defendants aver that FTSI is a Texas corporation and is a fitness studio located at 2725-Q Town Center Blvd Sugarland, Texas. Except as so stated, Defendants deny the allegations in paragraph 16 of the Complaint.

17. Answering paragraph 17 of the Complaint, Defendants aver that FTFI is a Texas corporation and is a fitness studio located at located at 405 West Parkwood Avenue, Friendswood, Texas. Except as so stated, Defendants deny the allegations in paragraph 17 of the Complaint.

## SUBJECT MATTER JURISDICTION

18. Answering paragraph 18 of the Complaint, Defendants aver that the Singhs are Texas citizens and deny having knowledge and information sufficient to form a belief as to the remaining allegations in paragraph 18.

19. Answering paragraph 19 of the Complaint, this paragraph sets forth legal conclusions that to not require an answer. To the extent that an answer is required, Defendants deny the allegations in paragraph 19 of the Complaint.

20. Answering paragraph 20 of the Complaint, this paragraph sets forth legal conclusions that to not require an answer. To the extent that an answer is required, Defendants deny the allegations in paragraph 20 of the Complaint.

## PERSONAL JURISDICTION AND VENUE

21.   Defendants deny the allegations in paragraph 21 of the Complaint.

22.  Defendants deny the allegations in paragraph 22 of the Complaint.

23.  Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. As to the remaining Defendants, Defendants deny the allegations in paragraph 23 of the Complaint.

24.  Defendants deny the allegations in paragraph 24 of the Complaint.

25.  Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. As to the remaining Defendants, Defendants deny the allegations in paragraph 23 of the Complaint.

## THE DEFENDANTS' FRANCHISE AGREEMENT

26. Answering paragraph 26 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 26 of the Complaint.

27. Answering paragraph 27 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 27 of the Complaint.

28. Answering paragraph 28 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 28 of the Complaint.

29. Answering paragraph 29 of the Complaint, Defendants aver that pursuant to the Franchise Agreement, Ardamandeep opened two ILKB franchised studios within the Territory: the Sugarland Location and the Friendswood Location. Except as so stated, Defendants deny the allegations in paragraph 29 of the Complaint.

30. Defendants deny the allegations in paragraph 30 of the Complaint.

31. Answering paragraph 31 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 31 of the Complaint.

32. Answering paragraph 32 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 32 of the Complaint.

33. Answering paragraph 33 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 33 of the Complaint.

34. Answering paragraph 34 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 34 of the Complaint.

35. Answering paragraph 35 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms,

legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 35 of the Complaint.

36. Answering paragraph 36 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 36 of the Complaint.

37. Answering paragraph 37 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 37 of the Complaint.

38. Answering paragraph 38 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 38 of the Complaint.

39. Answering paragraph 39 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 39 of the Complaint.

40. Answering paragraph 40 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 40 of the Complaint.

## ILKB'S INTELLECTUAL PROPERTY, TRADE SECRETS, AND CONFIDENTIAL INFORMATION

41. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint.

42. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint.

43. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint

44. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint.

45. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint.

46. Answering paragraph 46 of the Complaint, Defendants admit that Ardamandeep signed the Franchise Agreement, and respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, the allegations in paragraph 46 of the Complaint are denied.

47. The Singhs avers that during his franchise relationship with ILKB, the Singhs had access to certain information relating to ILKB's franchise model. Except as so stated, Defendants deny the allegations in paragraph 47 of the Complaint.

48.  Defendants deny that ILKB carefully safeguards its confidential and proprietary business information. To the extent that the allegations of paragraph 48 of the Complaint purport to paraphrase or interpret the terms of the Franchise Agreement, Defendants respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 48 of the Complaint.

49. To the extent that the allegations of paragraph 49 of the Complaint purport to paraphrase or interpret the terms of the Franchise Agreement, Defendants respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, Defendants deny the allegations in paragraph 49 of the Complaint.

50. Answering paragraph 50 of the Complaint, Defendants aver that at some point during the five-year franchise relationship Ardamandeep and Harjinder met with representatives from ILKB, and deny the remaining allegations in paragraph 50 of the Complaint.

51. Answering paragraph 51 of the Complaint, Defendants aver that Ardamandeep obtained some knowledge with respect to the personal fitness marketplace by virtue of having operated an ILKB franchise. Except as so stated, Defendants deny the remaining allegations in paragraph 51 of the Complaint.

52. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint.

## DEFENDANTS' ALLEGED CONTRACTUAL BREACHES AND INTENTIONAL INTERFERENCE WITH THE ILKB FRANCHISE SYSTEM

53. Defendants deny the allegations in paragraph 53 of the Complaint.

54. Defendants deny the allegations in paragraph 54 of the Complaint.

55. Defendants the allegations in paragraph 55 of the Complaint.

56. Defendants deny the allegations in paragraph 56 of the Complaint.

57. Answering paragraph 57 of the Complaint, Harjinder avers that on September 16, 2019 he purchased and registered the fittheorem.com domain name. Except as so stated, Defendants deny the remaining allegations in paragraph 57 of the Complaint.

58. Answering paragraph 58 of the Complaint, Defendants aver that Harjinder informed ILKB that he had to shut down the Sugarland and Friendswood locations due to the COVID-19 pandemic and deny the remaining allegations in paragraph 58 of the Complaint.

59. Defendants deny the allegations in paragraph 59 of the Complaint.

60.  Defendants aver that in August 2020, Harjinder started a business known as Fit Theorem, Inc. and deny the remaining allegations in paragraph 60 of the Complaint.

61. Answering paragraph 61 of the Complaint, Defendants aver that on May 19, 2020 FTI posted a picture online of one of FTI's trainers wearing the FTI logo. Defendants further aver that the  "www.fittathome.com" website was created for ILKB customers to schedule virtual ILKB classes.  Except as so stated, the allegations in paragraph 61 of the Complaint are denied.

62. Answering paragraph 62 of the Complaint, Defendants aver that on May 26, 2020 FTI posted a picture online of one of FTI's trainers wearing the FTI logo. Except as so stated, the allegations in paragraph 62 of the Complaint are denied.

63. Defendants deny the allegations in paragraph 63 of the Complaint.

64. Defendants aver that FTI made a Facebook post on July 29, 2020 thanking its customers and deny the remaining allegations in paragraph 64 of the Complaint.

65. Defendants deny the allegations in paragraph 65 of the Complaint.

66. Defendants deny the allegations in paragraph 66 of the Complaint.

67. Defendants deny the allegations in paragraph 67 of the Complaint.

68. Defendants deny the allegations in paragraph 68 of the Complaint.

69. Defendants deny the allegations in paragraph 69 of the Complaint.

70. Defendants cannot respond to the allegations in paragraph 70 of the Complaint because the allegations made in this paragraph are vague and ambiguous.

71. Defendants deny the allegations in paragraph 71 of the Complaint.

72. Defendants deny the allegations in paragraph 72 of the Complaint.

73. Answering paragraph 73 of the Complaint, Ardamandeep avers that he received a letter from ILKB dated August 11, 2020. To the extent that the allegations in paragraph 73 are inconsistent with the August 11, 2020 letter, they are denied. To the extent that the allegations in paragraph 73 of the Compliant purport to paraphrase or interpret the terms of the Franchise Agreement, Defendants respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, the allegations in paragraph 73 of the Complaint are denied.

74. Answering paragraph 74 of the Complaint, to the extent that the allegations in paragraph 74 refer to the August 11, 2020 letter referenced in paragraph 73 of the Complaint, to the extent that the allegations are inconsistent with the August 11, 2020 letter, they are denied. To the extent that the allegations in paragraph 74 of the Compliant purport to paraphrase or interpret the terms of the Franchise Agreement, Defendants respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, the allegations in paragraph 74 of the Complaint are denied.

75. Defendants deny the allegations in paragraph 75 of the Complaint.

## FIRST CAUSE OF ACTION

76. Defendants reallege and incorporate their answers to paragraphs 1-75 as though fully set forth herein.

77. Defendants deny the allegations in paragraph 77 of the Complaint.

78. Defendants deny the allegations in paragraph 78 of the Complaint.

79. Answering paragraph 79 of the Complaint, Defendants respectfully refer the Court to the Franchise Agreement for its terms, legal meaning, and import. Except as so stated, the allegations in paragraph 79 of the Complaint are denied.

80. Defendants deny the allegations in paragraph 80 of the Complaint.

81. Defendants deny the allegations in paragraph 81 of the Complaint.

82. Defendants deny the allegations in paragraph 82 of the Complaint.

83. Defendants deny the allegations in paragraph 83 of the Complaint.

84. Defendants deny the allegations in paragraph 84 of the Complaint.

## SECOND CAUSE OF ACTION

85. Defendants reallege and incorporate their answers to paragraphs 1-84 as though fully set forth herein.

86. Defendants deny the allegations in paragraph 86 of the Complaint.

87. Defendants deny the allegations in paragraph 87 of the Complaint.

88. Defendants deny the allegations in paragraph 88 of the Complaint.

89. Defendants deny the allegations in paragraph 89 of the Complaint.

90. Defendants deny the allegations in paragraph 90 of the Complaint.

91. Defendants deny the allegations in paragraph 91 of the Complaint.

92. Defendants deny the allegations in paragraph 92 of the Complaint.

## THIRD CAUSE OF ACTION

93. Defendants reallege and incorporate their answers to paragraphs 1-92 as though fully set forth herein.

94. Defendants deny the allegations in paragraph 94 of the Complaint.

95. Defendants deny the allegations in paragraph 95 of the Complaint.

96. Defendants deny the allegations in paragraph 96 of the Complaint.

97. Defendants deny the allegations in paragraph 97 of the Complaint.

98. Defendants deny the allegations in paragraph 98 of the Complaint.

99. Defendants deny the allegations in paragraph 99 of the Complaint.

100.       Defendants deny the allegations in paragraph 100 of the Complaint.

101.       Defendants deny the allegations in paragraph 101 of the Complaint.

## FOURTH CAUSE OF ACTION

102.       Defendants reallege and incorporate their answers to paragraphs 1-101 as though fully set forth herein.

103.       Defendants deny the allegations in paragraph 103 of the Complaint.

104.       Defendants deny the allegations in paragraph 104 of the Complaint.

105.       Defendants deny the allegations in paragraph 105 of the Complaint.

## FIFTH CAUSE OF ACTION

106.       Defendants reallege and incorporate their answers to paragraphs 1-105 as though fully set forth herein.

107.       Defendants deny the allegations in paragraph 107 of the Complaint.

108.       Defendants deny the allegations in paragraph 108 of the Complaint.

109.       Defendants deny the allegations in paragraph 109 of the Complaint.

110.       Defendants deny the allegations in paragraph 110 of the Complaint.

111.       Defendants deny the allegations in paragraph 110 of the Complaint.

112.       Defendants deny the allegations in paragraph 110 of the Complaint.

113.       Defendants deny the allegations in paragraph 110 of the Complaint.

114.       Defendants deny the allegations in paragraph 110 of the Complaint.

## NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF

115.     Defendants reallege and incorporate their answers to paragraphs 1-114 as though fully set forth herein.

116.     Defendants deny the allegations in paragraph 116 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

1.  Any allegation not expressly admitted herein is denied.

### SECOND AFFIRMATIVE DEFENSE

2.  The claims in the Complaint fail to state a claim against Defendants upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

3.  The claims in the Complaint are barred by the doctrines of laches.  Defendants have been prejudiced by Plaintiff's unduly long delay before commencing this action.

### FOURTH AFFIRMATIVE DEFENSE

4.  The Complaint and the relief it seeks are barred by the doctrine of equitable estoppel.

### FIFTH AFFIRMATIVE DEFENSE

5.  The Complaint and the relief it seeks are barred by Plaintiff's own wrongful actions or omissions, the doctrine of unclean hands, and Defendants are entitled to offset any damages owed to them.

### SIXTH AFFIRMATIVE DEFENSE

6.  Plaintiff is not entitled to any attorney fees, costs, or punitive damages.

## SEVENTH AFFIRMATIVE DEFENSE

7.   Defendants' alleged actions and/or inactions were not the proximate cause of Plaintiff's alleged damages.

## EIGHTH AFFIRMATIVE DEFENSE

8.   The Complaint and the relief it seeks are barred because the alleged agreement lacks consideration.

## NINTH AFFIRMATIVE DEFENSE

9.   The Complaint and the relief it seeks are barred because the alleged agreement is unconscionable.

## TENTH AFFIRMATIVE DEFENSE

10. Plaintiff failed to perform its obligations under the Agreement and therefore cannot recover for breach of the Agreement.

## ELEVENTH AFFIRMATIVE DEFENSE

11. The Court does not have personal jurisdiction over Harjinder, FTI, FTSI, and FTFI.

## COUNTERCLAIMS

1.      Defendant/Counter-plaintiff Ardamandeep Singh ("Counter-plaintiff") seeks to recover damages for fraud and breach of contract in connection with Defendants' sale of an ILKB franchised kickboxing studio to Counter-plaintiff. In brief, ILKB made false, fraudulent, and unsupported representations that ILKB franchisees broke even in a matter of weeks and generated certain levels of revenues and profits; that the franchise was ideal for absentee owners; and that

14

ILKB would handle virtually all marketing, which would result in more than enough memberships to make the franchise profitable, among others set forth more fully below.

2.     In reliance upon ILKB'S representations and omissions, Counter-plaintiff entered into a franchise agreement on July 29, 2015 (the "Franchise Agreement"), a copy of which is annexed hereto as Exhibit A. Pursuant to the Franchise Agreement, Counter-plaintiff operated two ILKB studios: one in Friendswood, Texas, and one in Sugarland, Texas (the "Studios").

3.     After investing approximately $200,000 in building out and equipping each of the Studios, the Studios failed to perform as promised, and Counter-plaintiff discovered that ILKB's representations had been false.

4.     Moreover, ILKB breached its agreement to provide marketing and other support to Counter-plaintiff and failed to meet its obligations under Section 6.2 of the Franchise Agreement.

5.     As a result of ILKB's breaches, including abandonment of the franchise system, and failure to provide any required support to Counter-plaintiff, including during the COVID-19 pandemic, Counter-plaintiff terminated the Franchise Agreement in July 2020.

6.     Counter-plaintiff now seeks to recover his damages, in an amount to be proven at trial but in no event no less than $500,000 for which all defendants are liable.

7.     Counter-plaintiff also seeks a declaratory judgment that he properly terminated the Franchise Agreement.

### **PARTIES**

8.     Counter-plaintiff Ardamandeep Singh is an individual who, at all relevant times, resided in and was a citizen of Texas.

9.     On information and belief, Counter-defendant ILKB LLC was at all times a New York limited liability company with an office located at 1844 Lansdowne Avenue, Merrick, New

York. On information and belief, ILKB's members are citizens of the State of New York. ILKB is or was a franchisor of the iLoveKickboxing franchise system.

10.     On information and belief Additional Defendant on the Counterclaim Michael Parrella is a citizen of the state of New York. Parrella is the chief executive officer and a member of ILKB, LLC.

11.     On information and belief, Additional Defendant on the Counterclaim ILKB TOO, LLC ("ILKB TOO") is a Florida limited liability company with an office located at 210 Lake Harris Drive, Lakeland, Florida and is authorized to and transacts business in the State of New York. On information and belief, the members of ILKB TOO are citizens of the states of California and Florida.

12.     On information and belief, a merger or de facto merger took place whereby ILKB TOO effectively took over ILKB and such merger or de facto merger involves (i) continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger; (ii) cessation or dissolution of the acquired ILKB entity soon following the merger; (iii) assumption by successor ILKB TOO of liabilities ordinarily necessary for the uninterrupted continuation of the acquired ILKB business; and (iv) continuity of certain management, personnel, assets and general business operations.

13.     On information and belief, (i) ILKB TOO expressly or impliedly assumed the ILKB predecessor's tort liability, including liabilities to the Counter-plaintiff, in connection with the merger or de facto merger; (ii) the merger or de facto merger resulted in a consolidation of ILKB TOO with ILKB; (iii) following the merger or de facto merger, the surviving business is a mere continuation of the ILKB predecessor; or (iv) the merger or de facto merger was entered into

fraudulently or wrongfully to avoid ILKB's liabilities to the Counter-plaintiff and other similarly situated franchisees.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over these counterclaims  under 28 U.S.C. §1332, as Counter-plaintiff and Counter-defendants and additional Defendants are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. This Court also has jurisdiction over these counterclaims under 28 U.S.C. §1367 as the counterclaims are so related to Plaintiff/Counter-defendant's claims in the action within such original jurisdiction that they form part of the same case or controversy.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Counter-defendants, ILKB and additional Defendant Parrella, and are residents and citizens of this district with their principal place of business within this district; Additional Defendant ILKB TOO, is the successor by merger to Counter-defendant, ILKB; and Counter-defendants have sufficient contacts to subject them to personal jurisdiction in this Court.

## FACTS

16.     Counter-plaintiff became interested in purchasing an ILKB franchise in 2015 and began discussing said purchase with ILKB around April 2015.

17.     Counter-plaintiff spoke with ILKB representatives, including Michael Parrella ("Parrella") and Scott Ferrari ("Ferrari"), ILKB's Director of Franchise Development,  about the ILKB franchise system on multiple occasions in the summer of 2015. Counter-plaintiff also attended ILKB's "Discovery Day" meeting for prospective franchisees to learn about the franchise on July 26-27, 2015, conducted by Parrella and Ferrari.

18.     Over the course of Counter-plaintiff's discussions with representatives of ILKB including Parrella and Ferrari, during Discovery Day and prior to signing the Franchise

17

Agreement, ILKB made the following representations to Counter-plaintiff concerning franchisees in the ILKB franchise system to induce him to sign the Franchise Agreement, which were later discovered to be false:

    a. ILKB made the representation that franchisees in the ILKB system break even in weeks or months; of opening their franchise with 200 members paying $135.00/month each which would generate $27,000/month, and costs would be at or below $25,000/month;

    b. ILKB told Counter-plaintiff that franchisees in the ILKB system were able to operate the franchises as absentee owners and spent only about 1-2 hours a week running their franchises, and that they were able to keep other full-time employment;

    c. ILKB told Counter-plaintiff that ILKB's marketing generated at least 100 trial members per month starting when their studios opened; and

    d. ILKB told Counter-plaintiff that the historical rate of trial to membership conversion rates were in the 70-80% range.

19. In reliance on the above representations of ILKB, Counter-plaintiff decided to purchase an ILKB franchise.

20. Over the years after signing the Franchise Agreement, Counter-plaintiff discovered that all of the aforementioned representations were false and misleading. On information and belief, there was no basis for these representations. In fact, prior to the representations being made:

    a. On information and belief, franchisees did not break even in weeks or months, as their costs greatly exceeded their revenue even with 200 paying members;

    b. Most ILKB franchisees were not able to operate as absentee owners;

    c.  ILKB's marketing only generated about 30 trial memberships per month;

    d.  Conversion rates for franchisees were in the 30-40% range.

21.    In reliance on the ILKB Counter-defendants' fraud and misrepresentations in paragraph 18, Counter-plaintiff were induced to sign the Franchise Agreement. As a result, Counter-plaintiff incurred no less than $500,000 in damages.

22.    Despite ILKB's representations that franchisees would break even with 200 members per month, Counter-plaintiff's costs greatly exceeded his revenue, even with 200 members per month.

23.    Despite ILKB's assurance at the Discovery Day meeting that its studios could be run by "absentee" owners, requiring only 1-2 hours per week of work by the owner, Counter-plaintiff had to commit full-time effort to running his franchise. Counter-plaintiff converted an average of 30-40% of trials to memberships rather than the 70-80% promised.

24.    In addition to the misrepresentations discussed above, ILKB also breached its Franchise Agreement with Counter-plaintiff.

25.    Specifically, despite collecting a marketing fee as provided for in the Franchise Agreement, ILKB's marketing completely failed Counter-plaintiff. Counter-plaintiff was forced to hire a third-party marketing company in order to survive and spent in excess of $100,000 in outside marketing costs.

26.    Parrella resigned as ILKB's CEO in January of 2020, but he abandoned the franchise system long before that. From the summer of 2019 onward, ILKB stopped providing support to Counter-plaintiff. Specifically, ILKB reduced staff and was unresponsive to franchisees including Counter-plaintiff; reduced the marketing that they provided (which was already

insufficient); failed to provide training support; and otherwise stopped complying with their obligations under the Franchise Agreement.

27.     ILKB's lack of support to its franchisees got substantially worse at the outset of the COVID-19 pandemic. From March through mid-May of 2020, fitness studios were shut down by the State of Texas due to the COVID-19 pandemic. During that time, ILKB provided no support whatsoever to keep the Studios operating. ILKB failed to provide guidance and best practices at the inception or and during the pandemic and failed to provide opening procedures and best practices tailored to each state's recommended and/or required pandemic response guidelines or regulations to assist in the reopening process. Counter-plaintiff were forced to create content for their members entirely on their own.

28.     On July 29, 2020, Counter-plaintiff terminated the Franchise Agreement due to ILKB's non-curable breaches.

29.     In addition, as a result off ILKB's breaches of contract and abandonment of the franchise system, Counter-plaintiff incurred no less than $500,000 in damages.

<u>**AS AND FOR A FIRST COUNTERCLAIM**</u>
**Breach of Contract**

30.     Counter-plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

31.     Counter-plaintiff and ILKB entered into a valid Franchise Agreement.

32.     As set forth more fully above, ILKB breached the Franchise Agreement by failing to market the franchise and  abandoning its support obligations under the Franchise Agreement.

33.     At all relevant times, Counter-plaintiff complied with all of his obligations under the Franchise Agreement.

34.      As a result of ILKB's breaches, Counter-plaintiff has been damaged in an amount to be determined at trial but in excess of $500,000. Counter-plaintiff is entitled to recover the losses that it has suffered as a result of ILKB's fraud, for which all Counter-defendants and additional Defendants are jointly and severally liable.

**AS AND FOR A SECOND COUNTERCLAIM**

**Common Law Fraud**

35.      Counter-plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

36.      ILKB and Parrella made false representations and fraudulent omissions in their communications with Counter-plaintiff regarding, among other things, the performance of franchises in the ILKB system prior to the time Counter-plaintiff signed the franchise agreement; and the costs of the operations, as set forth in paragraph 18 above.

37.      ILKB and Parrella knew these representations were false and made them with the intent that Counter-plaintiff would rely upon them to his detriment.

38.      Counter-plaintiff justifiably relied upon ILKB's and Parrella's misrepresentations and incurred damages as a result.

39.      Counter-plaintiff is entitled to recover the losses that it has suffered as a result of ILKB's fraud, for which all Counter-defendants and additional Defendants are jointly and severally liable.

**AS AND FOR A THIRD COUNTERCLAIM**

**Negligent Misrepresentation**

40.      Counter-plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

41.     ILKB negligently made false representations in the course of the sale of the franchise and that they knew to be contrary to the truth and knowing that Counter-plaintiff would rely upon them.

42.     As a result of Counter-plaintiff's reliance upon ILKB's negligent misrepresentations, Counter-plaintiff has incurred damages which he is entitled to recover.

## AS AND FOR A FOURTH COUNTERCLAIM

### Attorney's Fees

43.     Pursuant to Section 14.4 of the Franchise Agreement, Counter-plaintiff is entitled to recover reasonable legal fees and other expenses in connection with this action.

## AS AND FOR A FIFTH COUNTERCLAIM

### Declaratory Judgment

44.     ILKB materially breached the franchise agreement, most significantly, by abandoning the franchise system and its obligations under the Franchise Agreement.

45.     Section 13.1 of the Franchise Agreement provides that if ILKB is in material breach of the Agreement, a franchisee may terminate by giving prior written notice setting forth the asserted breach and providing 30 days in which to cure the default.

46.     Counter-plaintiff provided written notice of the breach. ILKB made no effort to address or attempt to cure any of the breaches cited by Counter-plaintiff. In any event, ILKB's abandonment of the franchise system constitutes an uncurable breach.

47.     Accordingly, Counter-plaintiff seeks a declaration that the Franchise Agreement was terminated in accordance with its terms on July 29, 2020.

**WHEREFORE,** Defendants/Counter-plaintiff respectfully pray that judgment be entered in their favor as follows:

A.        That the claims in Plaintiff's Complaint be dismissed, with prejudice, at Plaintiff's cost;

B.        That on the first through third Counterclaims, Defendant/Counter-plaintiff be awarded damages in an amount to be determined by the Court but believed to be in excess of $500,000; on the fourth counterclaim, interest, costs, and reasonable attorney's fees; and on the fifth counterclaim that the Court declare that Counter-plaintiff properly terminated the Franchise Agreement;

C.        That Defendants/Counter-plaintiff be awarded such other relief as justice requires.

**JURY DEMAND**

The Counter-plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 28, 2020

Respectfully submitted,

By: */s/ Michael Einbinder*
Michael Einbinder
Jacqueline Valenza
EINBINDER & DUNN, LLP
112 Madison Avenue, 8th Floor
New York, New York 10016
Tel.: (212) 391-9500
Fax: (212) 391-9025
E-Mail: me@ed-lawfirm.com

23