UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
ILKB, LLC, :
:
                *Plaintiff*, :
:
   -against- :
:
ARDAMANDEEP SINGH *et al.*, :     20-CV-4201 (ARR) (SJB)
:
                *Defendants*. :     <u>NOT FOR ELECTRONIC</u>
And :     <u>OR PRINT PUBLICATION</u>
:
ARDAMANDEEP SINGH, :     **OPINION & ORDER**
:
         *Defendant/Counterplaintiff*, :
:
   -against- :
:
ILKB, LLC, MICHAEL PARRELLA, and ILKB TOO, :
LLC, :
:
         *Counter-defendants/Additional* :
                   *defendants*. :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      In this trade secrets action, counterdefendants ILKB, LLC ("ILKB"), Michael Parrella, and ILKB Too, LLC ("ILKB Too") move to dismiss counterclaims for breach of contract, common law fraud, and negligent misrepresentation brought by counterplaintiff, Ardamandeep Singh. Counterdefs.' Mot. Dismiss ("Counterdefs.' Mot."), ECF No. 33. Counterplaintiff opposes. Counterpl.'s Opp'n, ECF No. 33-1. For the following reasons, I grant counterdefendants' motion. I dismiss without prejudice all counterclaims against ILKB Too for lack of personal jurisdiction, and I dismiss without prejudice the remaining counterclaims for failure to state a claim.

1

## BACKGROUND

Counterplaintiff, Ardamandeep Singh, is a former iLoveKickboxing franchisee. Singh Decl. ¶ 2, ECF No. 33-2. Counterdefendant ILKB is "a franchisor of the iLoveKickboxing franchise system." Countercompl. ¶ 9, ECF No. 23. Counterdefendant Michael Parrella used to be but no longer is the chief executive officer of ILKB. *Id.* ¶ 10; Asset Purchase Agreement 5, Valenza Decl. Ex. C, ECF No. 33-6. ILKB Too, a Florida LLC with an office located at 210 Lake Harris Drive, Lakeland, Florida, currently owns ILKB's assets and operates the iLoveKickboxing franchise system, having assumed those assets in June 2020. Asset Purchase Agreement; ILKB Transition Letter, Singh Decl. Ex. A, ECF No. 33-3; Countercompl. ¶ 11.

Mr. Singh's counterclaims for breach of contract, common law fraud, and negligent misrepresentation under New York law arise from his business dealings with all three counterdefendants. Mr. Singh alleges that around April 2015 he began discussions with representatives from ILKB, including Mr. Parrella, to purchase an ILKB franchise. Countercompl. ¶¶ 16–18. He also attended "ILKB's 'Discovery Day' meeting for prospective franchisees to learn about the franchise on July 26-27, 2015." *Id.* ¶ 17. Mr. Singh alleges that throughout these discussions ILKB made the following representations "to induce him to sign the Franchise Agreement[] which were later discovered to be false:

a. ILKB made the representation that franchisees in the ILKB system break even in weeks or months; of opening their franchise with 200 members paying $135.00/month each which would generate $27,000/month, and costs would be at or below $25,000/month;

b. ILKB told Counter-plaintiff that franchisees in the ILKB system were able to operate the franchises as absentee owners and spent only about 1-2 hours a week running their franchises, and that they were able to keep other full-time employment;

c. ILKB told Counter-plaintiff that ILKB's marketing generated at least 100 trial members per month starting when their studios opened; and

> d. ILKB told Counter-plaintiff that the historical rate of trial to membership conversion rates were in the 70-80% range."

*Id.* ¶ 18. Mr. Singh claims he relied on these representations to purchase an ILKB franchise. *Id.* ¶ 19.

In July 2015, Mr. Singh signed a Franchise Agreement with ILKB to open a kickboxing studio. Franchise Agreement, Countercompl. Ex. A, ECF No. 23-1. In this contract, he agreed to pay a monthly marketing fee to ILKB, and ILKB committed to "expend[ing] . . . an amount equal to the aggregate Marketing and Promotion Fees . . . collected from all of its franchisees less a 15% administrative fee" on "national, regional or local marketing, advertising, cooperative advertising, market research, public relations and promotional campaigns." *Id.* at 20. Mr. Singh now claims counterdefendants breached this contract because "ILKB's marketing completely failed Counter-plaintiff." Countercompl. ¶ 25.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(2)

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). "The jurisdictional analysis is not limited to the allegations of the complaint. [I] may consider supplemental materials, including affidavits, provided by either party." *Mercury Pub. Affairs LLC v. Airbus Defence & Space, S.A.U.*, No. 19-CV-7518 (MKV), 2020 WL 4926334, at *2 (S.D.N.Y. Aug. 21, 2020). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993); *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012).

### II. Federal Rule of Civil Procedure 12(b)(6)

In reviewing a complaint for failure to state a claim, I must "constru[e] [it] liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (citation omitted). I may consider only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

### I. Counterplaintiff Has Failed to Make a Prima Facie Showing of Personal Jurisdiction over ILKB Too.

Counterplaintiff asserts, and counterdefendants deny, that I have general personal jurisdiction over ILKB Too. Counterpl.'s Opp'n 2–7; Counterdefs.' Mot. 6. "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Chufen Chen*, 954 F.3d at 498 (citation omitted).

Here, counterplaintiff alleges that ILKB Too "is a Florida limited liability company with

4

an office located at 210 Lake Harris Drive, Lakeland, Florida." Countercompl. ¶ 11. As a Florida LLC, ILKB Too is not incorporated in New York. Moreover, nowhere in counterplaintiff's complaint or briefs does he allege that ILKB Too's principal place of business is in New York or plead any "exceptional" facts showing that ILKB's contacts with New York are so continuous and systematic as to render it at home in that state. *Chufen Chen*, 954 F.3d at 498. Therefore, counterplaintiff has failed to make a prima facie showing of general jurisdiction over ILKB Too under *Daimler*.

In the alternative, counterplaintiff argues that I have general personal jurisdiction over ILKB Too as a successor in interest of ILKB. Counterpl.'s Opp'n 5–7. "[W]hen a person is found to be a successor in interest, the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contacts with the state." *LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999). "Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). Rather, successor liability attaches only where: "(1) [the successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Id.*

Turning to the first factor, the Asset Purchase Agreement shows that ILKB Too did not explicitly assume ILKB's tort liability. In fact, ILKB Too only assumed limited contractual liabilities unrelated to this action. Asset Purchase Agreement 26.

As to the second and third factors, I may evaluate them together. *Cargo Partner AG v.*

5

*Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003) ("[T]he mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception." ). To determine whether there has been a de facto merger, I consider whether there was: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Nat'l Serv. Indus.*, 460 F.3d at 209. The key factor, however, is continuity of ownership: "[C]ontinuity of ownership is the 'essence of a merger' and thus a necessary predicate to a finding of a de facto merger." *Id*. at 212 (citation omitted). "The continuity-of-ownership element is designed to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability." *Id.* at 211 (citation and quotation marks omitted). Counterplaintiff alleges "continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger." Countercompl. ¶ 12. But the Asset Purchase Agreement disproves that allegation. Mr. Parrella did not retain an interest or a management role in ILKB Too and was required to resign as part of the sale of ILKB's assets. Asset Purchase Agreement 5; *see also* Transition Letter (noting new management of ILKB). Even the countercomplaint itself contradicts this allegation where it says "Parrella resigned as ILKB's CEO in January of 2020, but he abandoned the franchise system long before that." Countercompl. ¶ 26.

  As to the fourth factor, counterplaintiff alleges that "the merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to the Counter-plaintiff and other similarly situated franchisees." Countercompl. ¶ 13. But this allegation is merely conclusory.

6

Indeed, the Asset Purchase Agreement undercuts this assertion because ILKB agreed to indemnify ILKB Too for claims in certain enumerated lawsuits. Asset Purchase Agreement 10–11. Therefore, counterplaintiff has failed to make a prima facie showing of successor liability, and I dismiss all claims against ILKB Too without prejudice for lack of personal jurisdiction.

Finally, counterplainitff seeks leave to conduct jurisdictional discovery if I find he has failed to make a prima facie showing of personal jurisdiction over ILKB Too. Counterpl.'s Opp'n 7. I have "discretion to deny a request for discovery regarding personal jurisdiction . . . where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction." *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 147 n.3 (S.D.N.Y. 2018) (citation and quotation marks omitted). Here, counterplaintiff has not "explained how discovery would permit [him] to support any [jurisdictional] theory if it did exist," *id.*, and thus I deny his request.

## II. Counterplaintiff Has Failed to State a Claim for Common Law Fraud Against the Remaining Counterdefendants.

"In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Under New York law, there are five elements of fraud: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).

Counterdefendants claim counterplaintiff did not allege that counterdefendants knew their representations were false. Counterdefs.' Mot. 12. While counterplaintiff may make allegations of knowledge "generally," Fed. R. Civ. P. 9(b), a court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on

speculation and conclusory allegations." *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). Rather, counterplaintiff must allege facts that "give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). To satisfy this requirement, a plaintiff may allege: (a) facts showing that defendants had "both motive and opportunity to commit fraud," or (b) facts "constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91. Counterplaintiff only alleges that "ILKB and Parrella knew these representations were false and made them with the intent that Counter-plaintiff would rely upon them to his detriment." Countercompl. ¶ 37. He does not allege any facts underlying this assertion. Thus, I dismiss without prejudice counterplaintiff's common law fraud claim against ILKB and Mr. Parrella for failing to plead sufficient facts giving rise to a strong inference of fraudulent intent.

I also dismiss counterplaintiff's common law fraud claim against Mr. Parrella on an alternative ground. Counterdefendants argue that counterplaintiff did not specify who said which allegedly fraudulent statements when. Counterdefs.' Mot. 14–15. Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Here, counterplaintiff alleges that "ILKB" made various representations, later discovered to be false, "[o]ver the course of Counter-plaintiff's discussions with representatives of ILKB including Parrella . . . , during Discovery Day and prior to signing the Franchise." Countercompl. ¶ 18. But just attributing statements to the company does not satisfy Rule 9(b) as to Mr. Parrella. *See Mills*, 12 F.3d at 1175 (finding that alleging fraudulent statements attributed to a company did not satisfy Rule 9(b) as to fraud claims against its directors). Thus, I dismiss counterplaintiff's fraud claim

against Mr. Parrella without prejudice for this additional reason.

### III. Counterplaintiff Has Failed to State a Claim for Negligent Misrepresentation Against the Remaining Counterdefendants.

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Claims for negligent misrepresentation under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005).

Counterdefendants claim that counterplaintiff has failed to plead a "special relationship" required to state a claim for negligent misrepresentation under New York law. Counterdefs.' Mot. 13. Counterplaintiff asserts that "Counter-defendants, as the franchisors, stand in a special relationship with a franchisee." Counterpl.'s Opp'n 10–11. However, "[i]t is well established that, in general, the relationship between franchisor and franchisee does not constitute the sort of relationship needed to support a negligent misrepresentation claim." *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 625 (S.D.N.Y. 2011) (collecting cases); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 215 (S.D.N.Y. 2007) ("A simple commercial relationship, such as that between a franchisor and franchisee, does not constitute the kind of special relationship necessary for a negligent misrepresentation claim."). Counterplaintiff "points to no facts in the [countercomplaint] suggesting that this case presents an exception to the general rule." *JM Vidal, Inc.*, 764 F. Supp. 2d at 625–26. "[I]nstead, [he] asserts that the

9

requisite relationship existed merely *because* [counterdefendants were], in fact, [] franchisor[s]." *Id.* at 626. That is insufficient to survive a motion to dismiss. Accordingly, I dismiss counterplaintiff's negligent misrepresentation claim without prejudice for failure to state a claim.

**IV.     Counterplaintiff Has Failed to State a Claim for Breach of Contract Against the Remaining Counterdefendants.**

Under New York law, "[t]o make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

Counterdefendants first argue that counterplaintiff has failed to state a claim against Mr. Parella because only ILKB is a party to the Franchise Agreement. Counterdefs.' Mot. 16. Counterplaintiff does not appear to contest this fact. Thus, I deem counterplaintiff's breach-of-contract claim against Mr. Parella abandoned and dismiss it without prejudice.

As to ILKB, counterdefendants argue that counterplaintiff failed to plead a breach because the challenged actions do not actually violate the contract. Counterdefs.' Mot. 17. Counterplaintiff asserts that ILKB breached the franchise agreement "by failing to market the franchise and abandoning its support obligations under the Franchise Agreement." Countercompl. ¶ 32. "Despite collecting a marketing fee as provided for in the Franchise Agreement, ILKB's marketing completely failed Counter-plaintiff." Counterpl.'s Opp'n 12; Countercompl. ¶ 25. The Franchise Agreement states that ILKB "will expend . . . an amount equal to the aggregate Marketing and Promotion Fees . . . collected from all of its franchisees less a 15% administrative fee" on "national, regional or local marketing, advertising, cooperative advertising, market research, public relations and promotional campaigns." Franchise Agreement 20. ILKB also agreed that if requested by a

10

certain date, it "will provide" the franchisee "a statement of receipts and expenditures of the aggregate Marketing and Promotion Fees relating to the preceding calendar year." *Id.* Counterplaintiff does not allege that ILKB did not spend the amount of money on marketing that it agreed to spend. Rather, he alleges that "ILKB's marketing completely failed Counter-plaintiff" such that he "was forced to hire a third-party marketing company." Countercompl. ¶ 25. He further alleges that "[f]rom the summer of 2019 onward . . . ILKB . . . reduced the marketing that they provided (which was already insufficient)." *Id*. ¶ 26. But he does not allege that this reduced amount of marketing was below the threshold agreed upon in the Franchise Agreement. For this reason, counterplaintiff has failed to plead a breach of the Franchise Agreement, and I dismiss this claim without prejudice.[1]

### V. Counterdefendants' Motion to Dismiss Counterplaintiff's Claim for Attorneys' Fees Is Moot.

Counterdefendants seek to dismiss counterplaintiff's fourth counterclaim for attorneys' fees because attorneys' fees are not a cause of action. Counterdefs.' Mot. 17. In response, counterplaintiff requests leave to replead attorneys' fees as "requests for relief rather than a standalone claim." Counterpl.'s Opp'n 13. This issue is moot because I have dismissed all of counterplaintiff's claims without prejudice.

### CONCLUSION

For the foregoing reasons, I grant counterdefendants' motion. I dismiss without prejudice all counterclaims against ILKB Too for lack of personal jurisdiction, and I dismiss without prejudice the remaining counterclaims for failure to state a claim. Should counterplaintiff choose not to file an amended countercomplaint within ten days of the date of this order, the dismissal

---

[1] Additionally, because counterplaintiff failed to plead a breach of the Franchise Agreement, I also dismiss without prejudice his fifth counterclaim for a declaratory judgment.

will become with prejudice.


SO ORDERED.


                                                                /s/\
                                            Allyne R. Ross\
                                            United States District Judge

Dated:       June 7, 2021\
               Brooklyn, New York