UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
ILKB, LLC, :
:
                         *Plaintiff*, :
:
  -against- :
:
ARDAMANDEEP SINGH *et al.*, :
:      20-CV-4201 (ARR) (SJB)
                        *Defendants.* :
:      NOT FOR ELECTRONIC
And :      OR PRINT PUBLICATION
:
ARDAMANDEEP SINGH, :      **OPINION & ORDER**
:
               *Defendant/Counterplaintiff*, :
:
  -against- :
:
ILKB, LLC, MICHAEL PARRELLA, and ILKB TOO, :
LLC, :
:
               *Counterdefendants/Additional* :
                   *defendants.* :
------------------------------------------------------------------ X

ROSS, United States District Judge:

      In this trade secrets action, counterdefendants ILKB, LLC ("ILKB"), Michael Parrella, and ILKB Too, LLC ("ILKB Too") move for a second time to dismiss counterclaims for breach of contract, common law fraud, and a declaratory judgment brought by counterplaintiff, Ardamandeep Singh. Counterdefs.' Second Mot. Dismiss ("Counterdefs.' Mot."), ECF No. 39-1. Counterplaintiff opposes. Counterpl.'s Opp'n, ECF No. 40. For the following reasons, I dismiss without prejudice all claims against ILKB Too for lack of personal jurisdiction, I dismiss without prejudice counterplaintiff's fraud claims against ILKB and Mr. Parrella for failure to state a claim,

1

but I deny counterdefendants' motion to dismiss counterplaintiff's breach of contract and declaratory judgment claims against ILKB.

## BACKGROUND

Counterplaintiff, Ardamandeep Singh, is a former iLoveKickboxing franchisee. Singh Decl. ¶ 2, ECF No. 33-2. Counterdefendant ILKB is "a franchisor of the iLoveKickboxing franchise system." Am. Countercompl. ¶ 9, ECF No. 36. Counterdefendant Michael Parrella "is the chief executive officer and a member of ILKB, LLC." *Id.* ¶ 10. Counterdefendant ILKB Too is a Florida LLC with an office located at 210 Lake Harris Drive, Lakeland, Florida. *Id.* ¶ 11.

In his amended countercomplaint, Mr. Singh raises counterclaims for breach of contract, common law fraud, and a declaratory judgment that arise from his business dealings with all three counterdefendants. *Id.* ¶¶ 34–47. On June 7, 2021, I dismissed counterplaintiff's original counterclaims without prejudice.[1] Op. & Order 11–12, ECF No. 35. As relevant to the instant motion, I first determined that counterplaintiff had failed to make a prima facie showing of general personal jurisdiction over ILKB Too because he did not allege that the company's headquarters or principal place of business was in New York. *Id.* at 4–5. I also rejected counterplaintiff's argument that I had general personal jurisdiction over ILKB Too as a successor in interest of ILKB because he failed to show continuity of ownership. *Id.* at 5–7. I then denied leave to conduct jurisdictional discovery. *Id.* at 7. Second, I determined that counterplaintiff had failed to adequately plead a claim for common law fraud because he did not allege sufficient facts giving rise to a strong inference of fraudulent intent. *Id.* at 7–8. I also found that counterplaintiff had failed to attribute any alleged misrepresentations to Mr. Parrella. *Id.* at 8–9. Third, I determined that counterplaintiff had failed to state a breach of contract claim because he had not identified any concrete violations of the

---

[1] I assume familiarity with the original pleadings.

Franchise Agreement. *Id.* at 10–11.

Counterplaintiff filed an amended countercomplaint on June 17, 2021. Am. Countercompl. As to ILKB Too, counterplaintiff retained the same allegations but added that "ILKB Too is operating the ILKB franchise out of its Merrick, New York headquarters. On June 28, 2020, Daniel Castellini, the [sic] of ILKB Too, sent a letter to ILKB franchisees stating that ILKB Too executed an agreement to acquire all assets and take over ILKB." Am. Countercompl. ¶ 11. He did not add additional facts supporting the existence of a de facto merger.

As to his fraud claim, counterplaintiff alleges that:

Over the course of Counter-plaintiff's discussions with representatives of ILKB including Parrella and Ferrari, during Discovery Day and prior to signing the Franchise Agreement, ILKB and Parrella made the following representations to Counter-plaintiff concerning franchisees in the ILKB franchise system to induce him to sign the Franchise Agreement, which were later discovered to be false:

   a. ILKB and Parrella made the representation that franchisees in the ILKB system break even in weeks or months; of opening their franchise with 200 members paying $135.00/month each which would generate $27,000/month, and costs would be at or below $25,000/month;

   b. ILKB and Parrella told Counter-plaintiff that franchisees in the ILKB system were able to operate the franchises as absentee owners and spent only about 1-2 hours a week running their franchises, and that they were able to keep other full-time employment;

   c. ILKB and Parrella told Counter-plaintiff that ILKB's marketing historically generated at least 100 trial members per month starting when their studios opened; and

   d. ILKB and Parrella told Counter-plaintiff that the historical rate of trial to membership conversion rates were in the 70-80% range.

*Id.* ¶ 20. Further, counterplaintiff alleges that:

[P]rior to the representations being made, ILKB and its officers and agents, including Parrella, were aware that:

   a. On information and belief, franchisees did not break even in weeks or months, as their costs greatly exceeded their revenue even with 200 paying members;

3

  b. Most ILKB franchisees were not able to operate as absentee owners;

  c. ILKB's marketing only generated about 30 trial memberships per month;

  d. Conversion rates for franchisees were in the 30-40% range.

*Id.* ¶ 22.

As to the breach of contract claim, counterplaintiff had signed a Franchise Agreement with ILKB in July 2015 to open a kickboxing studio. Franchise Agreement, Am. Countercompl., Ex. A, ECF No. 36-1. He alleges that, "despite collecting a marketing fee as provided for in the Franchise Agreement, ILKB failed to spend an amount equal to the aggregate Marketing and Promotion Fees collected from its franchisees on national, regional or local marketing, advertising, cooperative advertising, market research, public relations and promotional campaigns as required by Section 10.1 of the Franchise Agreement." Am. Countercompl. ¶ 28. Section 10.1 states that "[i]f and when we begin collecting Marketing and Promotion Fees . . . , ILKB will expend . . . an amount equal to the aggregate Marketing and Promotion Fees . . . collected from all of its franchisees less a 15% administrative fee" on "national, regional or local marketing, advertising, cooperative advertising, market research, public relations and promotional campaigns." Franchise Agreement 20. In its "discretion," "ILKB would be obligated to spend the Marketing and Promotion Fees collected from . . . all . . . franchisees (less our 15% administrative fee) on regional, local or national media or other marketing techniques or programs . . . ." *Id.*

Counterdefendants filed a second motion to dismiss for lack of personal jurisdiction over ILKB Too and for failure to state a claim against all counterdefendants on July 23, 2021. Counterdefs.' Mot. Counterplaintiff opposed on August 2, 2021. Counterpl.'s Opp'n.

4

**LEGAL STANDARD**

I.   **Federal Rule of Civil Procedure 12(b)(2)**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). "The jurisdictional analysis is not limited to the allegations of the complaint. [I] may consider supplemental materials, including affidavits, provided by either party." *Mercury Pub. Affs. LLC v. Airbus Def. & Space, S.A.U.*, No. 19-CV-7518 (MKV), 2020 WL 4926334, at *2 (S.D.N.Y. Aug. 21, 2020). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993); *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012).

II.  **Federal Rule of Civil Procedure 12(b)(6)**

In reviewing a complaint for failure to state a claim, I must "constru[e] [it] liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (citation omitted). I may consider only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**DISCUSSION**

I.  **Counterplaintiff Again Has Failed to Make a Prima Facie Showing of Personal Jurisdiction over ILKB Too.**

Counterplaintiff asserts that his new allegation that ILKB Too "is operating the ILKB franchise out of its Merrick, New York headquarters" establishes general personal jurisdiction over the company under New York law. Am. Countercompl. ¶ 11; Counterpl.'s Opp'n 2–3. Counterdefendants deny this fact and further claim that it could not establish general personal jurisdiction even if true. Counterdefs.' Mot. 6–7. As I discussed in my last opinion and order, "a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Chufen Chen*, 954 F.3d at 498 (citation omitted).

Again, counterplaintiff does not allege that ILKB Too either is headquartered or principally transacts business in New York. Nor does operating the iLoveKickboxing franchise out of ILKB's New York headquarters constitute an "exceptional" fact that proves "continuous and systematic" contacts rendering ILKB Too "at home in th[at] forum." *Id*. The Supreme Court has recognized that merely operating a subsidiary in one state does not in itself establish general personal jurisdiction over the parent company there. *Daimler*, 571 U.S. at 136. Further, the Second Circuit has held that a franchisor is not subject to general personal jurisdiction wherever it has franchises. *Chufen Chen*, 954 F.3d at 500; *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (bank not subject to general personal jurisdiction where it has branch offices in the forum but is headquartered and incorporated elsewhere). Counterplaintiff has not alleged any specific

facts that distinguish ILKB Too from the corporations in *Daimler* and *Chufen Chen* or substantiate his argument that ILKB Too's contacts in New York otherwise are continuous and systematic.

In the alternative, counterplaintiff realleges that I have general personal jurisdiction over ILKB Too as a successor in interest of ILKB. Counterpl.'s Opp'n 3–4. As I discussed in my last opinion and order, successor liability attaches only where: "(1) [the alleged successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). Counterplaintiff does not invoke the first or fourth factors but argues that a de facto merger has taken place. Counterpl.'s Opp'n 3–4. To determine whether there has been a de facto merger, I consider whether there was: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Id*. I determined in my last opinion and order the counterplaintiff had failed to plead continuity of ownership, the most important factor, because Mr. Parrella, the former CEO of ILKB, retained no interest in ILKB Too under the Asset Purchase Agreement ("APA") governing ILKB's sale. Op. & Order 6; APA 5, Am. Countercompl., Ex. C, ECF No. 36-3. Counterplaintiff has not cured this defect.

Nevertheless, counterplaintiff claims that ILKB Too de facto merged with ILKB because it assumed all franchise agreements, including counterplaintiff's, under the APA. Counterpl.'s Opp'n 3; APA 21. But counterdefendants dispute that the conditions precedent that would have

triggered the transfer of assets to ILKB Too have taken place. Counterdefs.' Mot. 7. Indeed, they have submitted a declaration from ILKB's current CEO, Daniel Castellini, averring that ILKB Too is not operating the iLoveKickboxing.com business and that ILKB, owned by Mr. Parrella in its entirety, remains the franchisor, holding both the assets and liabilities of the franchise. Castellini Decl. ¶¶ 2, 5, 7–9, Counterdefs.' Mot., Ex. B, ECF No. 39-3. Counterplaintiff's only contrary evidence is a statement made on June 29, 2020 in a different proceeding that a new buyer for ILKB "signed a contract and . . . closed on a transaction," Tr. 14:4–5, Counterpl.'s Opp'n, Ex. B, ECF No. 40-2, and a statement in a June 28, 2020 letter sent by Mr. Castellini to ILKB franchisees that "[a]s of June 26th 2020 agreements were executed to acquire all assets and take full control of [ILKB]," Am. Countercompl., Ex. B, ECF No. 36-2. Mr. Castellini's June 7, 2021 declaration outweighs these statements because it is sworn on penalty of perjury and is dated a year later. Castellini Decl. Moreover, those previous statements do not necessarily contradict Mr. Castellini's declaration because the deal could have closed in June 2020 but the conditions precedent for the asset sale could have not occurred by June 2021. In light of the totality of the evidence, counterplaintiff again has failed to meet his burden to make a prima facie showing of personal jurisdiction over ILKB Too. Thus, I dismiss without prejudice all claims against ILKB Too for lack of personal jurisdiction.

      Counterplaintiff again seeks jurisdictional discovery in the alternative, this time to determine "whether and when" ILKB's assets transferred to ILKB Too. Counterpl.'s Opp'n 3–4. But counterplaintiff still has not "explained how discovery would permit [him] to support any [jurisdictional] theory if it did exist," *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 147 n.3 (S.D.N.Y. 2018), because even if the assets have transferred, counterplaintiff still could not show continuity of ownership, *see* Op. & Order 6. Therefore, I deny

leave to seek jurisdictional discovery.

Further, while my dismissal is without prejudice, I deny leave to amend any counterclaims against ILKB Too because any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] futile request to replead should be denied."); *Smith v. United States*, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) (summary order) (explaining that where repleading in the same district would not "cure the jurisdictional default," a court should dismiss a claim for lack of personal jurisdiction without prejudice but deny leave to amend).

## II. Counterplaintiff Has Failed to State a Claim for Common Law Fraud Against ILKB and Mr. Parrella.

Counterdefendants argue that counterplaintiff has failed to meet Federal Rule of Civil Procedure 9(b)'s pleading standard. Counterdefs.' Mot. 8–9. "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Under New York law, there are five elements of fraud: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Here, counterplaintiff alleges that "ILKB and Parrella" made various representations, later discovered to be false, "[o]ver the course of Counter-plaintiff's discussions with representatives of ILKB including Parrella and Ferrari, during Discovery Day and prior to signing the Franchise Agreement." Am. Countercompl. ¶ 20. While counterplaintiff sufficiently attributes all four

9

misrepresentations to both ILKB and Mr. Parrella, he alleges that they made these statements "[o]ver the course of" a four-month time period. *Id.* ¶¶ 18–20 (alleging that discussions began in April 2015 and Discovery Day took place between July 26–27, 2015); Franchise Agreement 1 (indicating the agreement was "made and entered into as of July 29, 2015"). A "vague four-month period of time is insufficient to satisfy the pleading standards of Rule 9(b)." *Alnwick v. Eur. Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003); *see also Skylon Corp. v. Guilford Mills, Inc.*, No. 93-CV-5581 (LAP), 1997 WL 88894, at *2 (S.D.N.Y. Mar. 3, 1997) ("Although plaintiff outlines a four-month window during which all of the misrepresentations occurred, this does not satisfy the pleading standard of Rule 9(b)."); *Sendar Co. v. Megaware Inc.*, 705 F. Supp. 159, 161 (S.D.N.Y. 1989) ("The allegations fail to specify the date on which fraudulent statements were made, merely alleging that statements were made some time during a two month period."). Nor has counterplaintiff alleged where ILKB and Mr. Parrella made any of the purported misrepresentations. Therefore, counterplaintiff has failed to meet the Rule 9(b) pleading standard on these two grounds.

      Nevertheless, I will address counterdefendants' additional arguments for dismissal. First, counterdefendants argue that counterplaintiff failed to adequately plead scienter. Counterdefs.' Mot. 9–10. To establish scienter, counterplaintiff must allege facts that "give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). He may do so by alleging: (a) facts showing that counterdefendants had "both motive and opportunity to commit fraud," or (b) facts "constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank*, 459 F.3d 273, 290–91 (2d Cir. 2006). After reciting the contested statements, counterplaintiff alleges that "prior to the representations being made," ILKB and Mr. Parrella "were aware" of concrete facts that show

those statements were false. Am. Countercompl. ¶ 22. Being aware of facts that undercut the truth of their statements "give[s] rise to a strong inference" that ILKB and Mr. Parrella intended to defraud counterplaintiff by making knowingly false representations. *Shields*, 25 F.3d at 1128. Therefore, I cannot dismiss counterplaintiff's fraud claims for failure to plead scienter.

Second, counterdefendants claim counterplaintiff has failed to adequately plead that his reliance on the alleged misrepresentations was reasonable. In making this determination, "[courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.,* 343 F.3d 189, 195 (2d Cir. 2003). "A plaintiff must also allege that such reliance was to its detriment, *i.e.*, 'that the misrepresentations directly caused the loss about which plaintiff complains (loss causation).'" *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 461 (S.D.N.Y. 2018) (quoting *Meyercord v. Curry*, 832 N.Y.S.2d 29, 30 (1st Dep't 2007)). "Although reasonable reliance is a fact-specific inquiry generally considered inappropriate for determination on a motion to dismiss, whether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss in certain circumstances." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007).

"The question of whether a plaintiff's reliance was reasonable typically turns on plaintiff's knowledge, or access to knowledge, at the time the alleged misrepresentations were made; that is, what plaintiff knew, or should have ascertained, given the particular circumstances." *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 118 (S.D.N.Y. 2008), *aff'd sub nom. Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x 197 (2d Cir. 2010) (summary order). "[W]hen misrepresentations relate to matters found to be 'peculiarly within' a defendant's

knowledge, 'it is said that plaintiff may rely without prosecuting an investigation, as he has no independent means of ascertaining the truth.'" *Id.* (quoting *Mallis v. Bankers Tr. Co.*, 615 F.2d 68, 80 (2d Cir.1980)). "However, when plaintiff 'has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means.'" *Id.* (quoting *Mallis*, 615 F.2d at 80–81). Here, the alleged misrepresentations pertain to statistics reflecting ILKB franchisees' past performance, which are "peculiarly within" ILKB's knowledge. *Mallis*, 615 F.2d at 80. Moreover, counterplaintiff was an individual franchisee up against an established franchisor. Therefore, I cannot dismiss counterplaintiff's fraud claims for failure to plead reasonable reliance.

Third, counterdefendants argue that the alleged misrepresentations are not actionable in fraud. Counterdefs.' Mot. 10–12. Under New York law, "a prediction of something which is expected to occur in the future will not sustain an action for fraud[.]" *Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115, 117 (1st Dep't 2008); *see also Abselet v. Satra Realty, LLC*, 926 N.Y.S.2d 178, 182 (3d Dep't 2011) ("[R]epresentations by defendants concerning the business venture's potential for profit . . . are opinion rather than misrepresentations of fact necessary to sustain a cause of action for fraud."). "To constitute actionable fraud, the false representation relied upon must relate to a past or existing fact, or something equivalent thereto, as distinguished from a mere estimate or expression of opinion." *Zanani v. Savad*, 630 N.Y.S.2d 89, 90 (2d Dep't 1995). In other words, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20–21 (2d Cir. 2000) (collecting cases).

Here, some of the alleged misrepresentations convey past statistics concerning franchisees in the ILKB system, but one expresses predictions of future performance. First, counterplaintiff

alleges that ILKB and Mr. Parrella told him that ILKB franchisees "break even in weeks or months[] of opening their franchise with 200 members paying $135.00/month each which would generate $27,000/month, and costs would be at or below $25,000/month." Am. Countercompl. ¶ 20. This statement uses predictive language—that a new franchisee "*would* generate $27,000/month, and costs *would* be at or below $25,000/month." *Id.* (emphasis added). Therefore, this statement does not express "a past or existing fact" but rather "a mere estimate" of future profit. *Zanani*, 630 N.Y.S.2d at 90; *Abselet*, 926 N.Y.S.2d at 182. Thus, I find counterplaintiff's fraud claim based on this statement to be insufficiently pleaded.

Second, counterplaintiff alleges ILKB and Mr. Parrella told him that ILKB franchisees "were able to operate the franchises as absentee owners and spent only about 1-2 hours a week running their franchises" while maintaining full-time jobs. Countercompl. ¶ 20. This statement uses past tense and conveys that current and past franchisees have acted as absentee owners. Therefore, this statement constitutes "a past or existing fact," *Zanani*, 630 N.Y.S.2d at 90, and adequately supports a fraud claim.

Finally, counterplaintiff alleges ILKB and Mr. Parrella told him that "ILKB's marketing historically generated at least 100 trial members per month" and "the historical rate of trial to membership conversion rates were in the 70-80% range." Countercompl. ¶ 20. These are also expressions of historical facts and similarly support a fraud claim.

For these reasons, I dismiss without prejudice counterplaintiff's fraud claims against ILKB and Mr. Parrella for failure to state a claim. As discussed above, three deficiencies remain: (1) counterplaintiff has failed to plead with particularity when the alleged misrepresentations were made; (2) counterplaintiff has failed to plead with particularity where the alleged misrepresentations were made; and (3) counterplaintiff's first alleged misrepresentation is a future

prediction not actionable in fraud. However, I allow counterplaintiff to replead because I did not address all of these deficiencies in my last opinion and order. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (noting courts dismissing claims under Rule 9(b) typically grant leave to replead unless "plaintiffs have . . . already had one opportunity to plead fraud with greater specificity"). The filing of any amended counterclaim is without prejudice only insofar as counterplaintiff files it within seven days of the issuance of this opinion and order. My dismissal is with prejudice if counterplaintiff fails to file an amended counterclaim within that time frame.

**III.   Counterplaintiff Has Stated a Claim for Breach of Contract Against ILKB.**

Counterplaintiff argues that ILKB breached Section 10.1 of the Franchise Agreement by "collecting a marketing fee" but failing "to spend an amount equal to the aggregate Marketing and Promotion Fees collected from its franchisees on national, regional or local marketing, advertising, cooperative advertising, market research, public relations and promotional campaigns." Am. Countercompl. ¶ 28. ILKB asserts that this fact does not establish a violation of the Franchise Agreement and in any event counterplaintiff has failed to perform or to allege damages. Counterdefs.' Mot. 12–14.

Under New York law, "[t]o make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). The parties do not contest that the Franchise Agreement is valid, but they dispute the remaining factors.

Turning first to breach, ILKB's argument that under Section 10.1 it "was *not* required to 'spend an amount equal to the aggregate Marketing and Promotion Fees collected'" but rather was

14

"permitted to take 15% administrative fee" contradicts the plain language of the Franchise Agreement. Counterdefs.' Mot. 14. Section 10.1 uses mandatory not permissive language. Subsection (a) states that "[i]f and when [ILKB] begin[s] collecting Marketing and Promotion Fees . . . ILKB *will expend*, for the purposes of national, regional or local marketing advertising, cooperative advertising, market research, public recognition and acceptance thereof, an amount equal to the aggregate Marketing and Promotion Fees . . . collected from all its franchisees less a 15% administrative fee." Franchise Agreement 20 (emphasis added). Subsection (b) adds that:

> In [ILKB's] sole discretion and as we deem appropriate, ILKB *would be obligated* to spend the Marketing and Promotion Fees collected from you and all other iLoveKickboxing.com franchisees (less our 15% administrative fee) on regional, local or national media or other marketing techniques or programs designated to promote the retail sale of ILKB Services and Products, the Marks and other aspects of the iLoveKickboxing.com brand, creative and production costs, and for other purposes deemed appropriate by us to enhance and promote the general recognition of iLoveKickboxing.com franchises.

*Id.* (emphasis added). Further, the Franchise Agreement empowers franchisees to hold ILKB accountable for its marketing spend. Section 10.1 provides that franchisees may request from ILKB "a statement of receipts and expenditures of the aggregate Marketing and Promotion Fees relating to the preceding calendar year, certified to be correct by an officer of ILKB." *Id.* These provisions make clear that while ILKB has discretion to decide *how* to spend the marketing and promotion fees collected, it nonetheless is required to spend that money (less a 15% administrative fee). Counterplaintiff alleges that ILKB has failed to spend the requisite amount of marketing and promotion fees collected. Am. Countercompl. ¶ 28. Therefore, counterplaintiff has adequately alleged breach.[2]

---

[2] Counterplaintiff also alleges that ILKB breached Section 6.2 of the Franchise Agreement "by failing to market the franchise and abandoning its support obligations." Am. Countercompl. ¶¶ 4, 36. Section 6.2, however, only outlines possible support opportunities ILKB may provide within its "sole discretion." Franchise Agreement 8. Counterplaintiff has not alleged that ILKB

15

Turning next to counterplaintiff's performance, counterplaintiff alleges that he "complied with all of his obligations under the Franchise Agreement." *Id.* ¶ 37. Counterdefendants claim, however, that in his answer counterplaintiff admitted to "currently operating a competing business in violation of the contract," and in his amended countercomplaint he demonstrated that "he did not comply with the dispute resolution process in the Franchise Agreement" or his "termination obligations." Counterdefs.' Mot. 12. Counterdefendants' first argument mischaracterizes counterplaintiff's answer. Counterplaintiff admitted to the existence of Fit Theorem, Inc. as a fitness studio but did not admit that he violated the Franchise Agreement. Am. Ans. ¶¶ 14–17. Similarly, the amended countercomplaint merely states that "[o]n July 29, 2020, Counter-plaintiff terminated the Franchise Agreement due to ILKB's non-curable breaches." Am. Countercompl. ¶ 32. It is not clear from the face of the countercomplaint or its exhibits how counterplaintiff terminated the Franchise Agreement, and I cannot consider extraneous evidence on this point. *See supra* Legal Standard. Thus, I must accept as true counterplaintiff's assertion that he complied with his obligations under the Franchise Agreement, which establishes performance.

Turning lastly to damages, counterplaintiff alleges that "as a result of[] ILKB's breaches of contract and abandonment of the franchise system, [he] incurred no less than $500,000 in damages." Am. Countercompl. ¶ 33. Counterdefendants instead claim that counterplaintiff's spending money on promotion and marketing "was actually contemplated under the franchise agreement and . . . cannot be considered damages." Counterdefs.' Mot. 14. While the Franchise Agreement does contemplate franchisees paying some money out of pocket for marketing, *see* Franchise Agreement 5, counterplaintiff has alleged that ILKB's breach forced him to spend far

---

completely abdicated its discretion to provide support opportunities, and thus I find he has failed to allege breach of this provision.

more than that sum, Am. Countercompl. ¶ 29. That allegation sufficiently states causation and damages, and counterplaintiff has adequately stated a claim for breach of contract.

### IV. Counterplaintiff Has Stated a Claim for a Declaratory Judgment.

Related to his breach of contract claim, counterplaintiff seeks "a declaration that the Franchise Agreement was terminated in accordance with its terms on July 29, 2020." Am. Countercompl. ¶ 47. Counterdefendants argue that counterplaintiff has failed to state such a claim because he violated the Franchise Agreement by not complying with the dispute resolution process it mandated. Counterdefs.' Mot. 14–15. As discussed above, it is not clear from the face of the countercomplaint and attachments that counterplaintiff did not follow the required dispute resolution process. *See supra* Discussion.III. Therefore, accepting facts in the countercomplaint as true, counterplaintiff has adequately alleged entitlement to the declaration he seeks.

### CONCLUSION

For the foregoing reasons, I dismiss without prejudice all claims against ILKB Too for lack of personal jurisdiction, and I deny leave to replead any counterclaims against it. Additionally, I dismiss without prejudice counterplaintiff's fraud claims against ILKB and Mr. Parrella for failure to state a claim because counterplaintiff has failed to plead with particularity when and where the alleged misrepresentations were made and the first alleged misrepresentation is a future prediction not actionable in fraud. Nevertheless, I grant counterplaintiff leave to cure these deficiencies. The filing of any amended counterclaim is without prejudice only insofar as counterplaintiff files it within seven days of the issuance of this opinion and order. My dismissal is with prejudice if counterplaintiff fails to file an amended counterclaim within that time frame. Finally, I deny counterdefendants' motion to dismiss counterplaintiff's breach of contract and declaratory judgment claims against ILKB.

SO ORDERED.

                                                                                                             /s/_____
                                                                              Allyne R. Ross
                                                                              United States District Judge

Dated:        August 12, 2021
                Brooklyn, New York